**Jane ADKINS, Respondent,**

v.

**UNIVERSITY HEALTH CARE CENTER and Ideal Mutual Insurance Company, Relators.**

**No. C8–86–2091.**

Supreme Court of Minnesota.

May 1, 1987.

232

Kent Charpentier, St. Paul, for appellant.

Raymond R. Peterson, Minneapolis, for respondent.

WAHL, Justice.

This is an appeal by the employer/insurer from a decision of the Workers' Compensation Court of Appeals (WCCA) reversing the Medical Services Review Board's denial of the employee's request for medical treatment in the nature of high gastric bypass surgery. We reverse.

Jane Adkins (employee) sustained a low back injury on September 17, 1983 while employed by University Health Care Center (employer) as a staff nurse. Employer and its workers' compensation carrier Ideal Mutual Insurance Company admitted liabil-

1. Minn.Stat. § 176.135, subd. 1 (Supp.1983) provides in relevant part:

ity and paid certain workers' compensation benefits. Employee was eventually able to return to work in a sedentary capacity although she still experienced back pain from time to time.

In November 1983, a CT scan was made of employee's lumbosacral spine which showed a bulging disc and pinched nerve. The CT scan was difficult to read, however, because of employee's obesity. Employee has had a weight problem all her life, and at the time of the hearing, she weighed approximately 277–80 pounds. She weighed approximately 289 pounds at the time of her injury.

Employee's treating physician, Dr. Donald Miller (an orthopedic surgeon), believed that employee's back condition would require aggressive treatment in the nature of a decompressive laminectomy or chymopapaine injection sometime in the future. Employee's obesity, however, precluded such treatment. Dr. Miller referred employee to Dr. Alexander Lifson, a neurosurgeon at the Institute for Low Back Care, for a second opinion regarding treatment. Dr. Lifson was also of the opinion that employee's obesity prevented aggressive treatment of her back condition should such treatment become necessary. Dr. Lifson suggested that employee attempt weight reduction through diet or surgical intervention.

Employee unsuccessfully attempted weight reduction. Because it appeared to him that employee could not achieve the necessary weight loss, Dr. Miller recommended surgical intervention—high gastric bypass surgery (stomach stapling)—and referred employee to Dr. Leonard Schultz, a general surgeon. Following his examination of employee, Dr. Schultz was of the opinion that subject to favorable psychiatric evaluation, employee was a candidate for a high gastric bypass.

Employee then requested that employer/insurer provide payment for the gastric bypass procedure pursuant to Minn.Stat. § 176.135, subd. 1 (Supp.1983)[1] as reasonably required to cure and relieve the ef-

The employer shall furnish any medical,
* * * surgical and hospital treatment * * * as

fects of employee's work-related back injury. Employer/insurer declined to pay for the procedure and when the matter was brought before the Medical Services Review Board, they submitted the report of the adverse orthopedic surgeon, Dr. Paul T. Yellin. Dr. Yellin agreed employee was not a good candidate for aggressive treatment for her back condition because of her marked obesity. Dr. Yellin also agreed that she first needed a weight reduction program before any back surgery could be considered. However, he did not rule out diet, as opposed to surgery, as the means to accomplish that weight loss.

The Medical Services Review Board denied employee's request for the medical treatment expense finding that the requested stomach stapling surgery was not reasonably required in this case. Specifically, the review board found that (1) it was inconclusive that there was current demonstrable need for neurological or orthopedic intervention to the back and thus no immediate need for rapid weight loss as a prerequisite to any back surgery; (2) employee had not exhausted conservative weight loss methods; and (3) there were recognized risks involved with gastric bypass and inconclusive proof of the long term effectiveness of the procedure in keeping weight down. Employee appealed and the WCCA reversed in a 2–1 decision. By writ of certiorari, employer/insurer seek further review in this court.

The parties agree, and we have held today in *Hoffman v. Gopher State Silica,* 404 N.W.2d 279 (Minn.1987) that the WCCA reviews the findings and order of the Medical Services Review Board to determine if they are supported by substantial evidence. In this case, while the medical experts agreed that employee's obesity precluded aggressive treatment of her back condition, none of the experts believed such treatment was presently required. Thus, as found by the Review Board, there was no immediate need for the drastic type of

weight loss involved in the requested stomach stapling procedure.

▇▇ There was also no evidence presented that the gastric bypass procedure would be effective long term in maintaining weight control so that employee would be in a position to benefit from back surgery in the future when, and if, she needed it. *See* Minn.Stat. § 176.103, subd. 3 (1986). The Medical Services Review Board, relying on its own expertise, noted that the gastric bypass surgery had not yet been established within the medical community as clinically effective on a long term basis.[2]

▇▇ The propriety and necessity of the requested medical treatment were questions of fact, and the employee had the burden of proving her case. *Casey v. Northern States Power Co.,* 247 Minn. 295, 313, 77 N.W.2d 67, 78 (1956). The Medical Services Review Board concluded that employee had not met her burden, and it was not the function of the WCCA to review that determination on a *de novo* basis. Based on the record in this case, we conclude that the decision of the Medical Services Review Board was supported by substantial evidence. The WCCA therefore erred in reversing that decision. *Hoffman,* 404 N.W.2d at 281.

The decision of the Workers' Compensation Court of Appeals is reversed, the decision of the Medical Services Review Board is reinstated.

SIMONETT, YETKA and SCOTT, JJ., dissent.

SIMONETT, Justice (dissenting).

I respectfully dissent. The Board found no need for medical intervention. But all four doctors agreed some intervention was appropriate. The only reason it has not been tried is that Ms. Adkins' weight is prohibitive. Even employer's counsel says, "I realize she should get the surgery for the low back problems." The Board says, in any event, Ms. Adkins is functioning

may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury.

2. Under Minn.R. 5217.0210, subp. 6 (1985), the Medical Services Review Board may take notice

of technical or scientific facts within the special knowledge of the board; but it must do so on the record. This procedure was not followed in this case, but the parties have not placed this in issue.

well in her present condition. But she is functioning precariously, has good days and bad days, may lift no more than 5 pounds, and, although she is an R.N., the employer's doctor agrees she must not exacerbate her back condition by doing even routine patient care. The Board says Ms. Adkins should try dieting. But she has, to no avail. She simply cannot, on her own, lose 150 pounds. Her doctor confirms this. The employer's doctor mentions weight reduction by either diet or surgical approach, but his report indicates a lack of awareness of the patient's previous unsuccessful attempts to diet. The Board says, without documentation, that the effectiveness of stomach stapling is not established. But all four examining doctors apparently thought otherwise. Even the Board does not really reject stomach stapling but only urges that alternatives first be exhausted—ignoring that the alternatives have already been exhausted. *Cf. Evans v. W.E.A. Insurance Trust*, 122 Wis.2d 1, 361 N.W.2d 630 (1985) (health insurer acted arbitrarily in denying coverage for gastric bypass surgery; opinion quotes insurer's internal guidelines for gastric bypass surgery eligibility). The Board said there are health risks with the surgery. Undoubtedly there are, and perhaps more risk than with most surgery, but the employee is willing to assume the risk. The employer argues it should not have to pay for surgery to reduce weight the employee had before she was hired. The point would be well taken except that the medical condition being ultimately addressed here is the work-related low back injury.

This, it seems to me, is one of those rare instances where the Board's findings lack substantial evidentiary support and I would affirm the WCCA's reversal.

YETKA, Justice (dissenting).
I join in the dissent of Justice Simonett.

SCOTT, Justice (dissenting).
I join in the dissent of Justice Simonett.